**PORT SIDE TRANSPORT, INC.,** Liberty Steel Products, Inc., Ferrous Metal Processing, Inc., Appellants,

v.

**VAN HUFFEL TUBE CORPORATION,** Appellee.

**No. C87–1935Y.**

United States District Court, N.D. Ohio, E.D.

June 29, 1989.

Simpson & Moran, Michael A. Nedelman, Birmingham, Mich., and David R. Ritter, Sterling Heights, Mich., for Port Side Transport, Inc.

Mark Schlachet, Cleveland, Ohio, for Liberty Steel Products, Inc.

Richard D. Tomisck, Climaco, Climaco, Seminatore, Lefkowitz & Garofoli Co., L.P.A., Cleveland, Ohio, for Ferrous Metal Processing, Inc.

Letson & Jarrett, Mark Lescovec, Robert A. Miller, Warren, Ohio, for Van Huffel Tube Corp.

## MEMORANDUM OF OPINION RE: AFFIRMING BANKRUPTCY COURT

KRENZLER, District Judge.

The above-captioned bankruptcy appeal was initiated by appellants, Port Side Transport, Inc. ("Port Side"), Liberty Steel Products, Inc. ("Liberty"), and Ferrous Metal Processing, Inc. ("Ferrous"). Appellants seek the reversal of a bankruptcy court order directing them to return to the debtor, Van Huffel Tube Corporation ("Van Huffel"), the appellee herein, certain pre-petition payments which were deemed preferences.

Pursuant to 28 U.S.C. § 636(b)(1), (3), and L.Civ.R. 19.05–19.12, this Court referred the matter to a magistrate for a report and recommended decision. The Magistrate filed a Report and Recommended Decision affirming the bankruptcy court. Only Port Side filed objections to the Magistrate's Report. For the following reasons, Port Side's objections are not well taken, and the bankruptcy court's order shall be affirmed.

The bankruptcy court's findings of fact indicate the following. On or about April 25, 1985, the debtor made a discretionary draw down on a revolving loan from Chemical Bank ("Chemical") in the amount of $618,000.00. Chemical had a blanket lien on all of the debtor's collateral as security. The debtor used this money to make payments to select unsecured trade creditors, while other unsecured non-trade creditors received no payment. Among those unsecured trade creditors receiving payment were Port Side, which received $5,630.62, Liberty, which received $60,187.26, and Ferrous, which received $4,433.35. The payments received by appellants represent approximately 20 percent of their respective outstanding accounts payable owed by the debtor. The debtor's two largest unsecured trade creditors received approximately 5 percent of their outstanding balances due.

On July 16, 1985, the debtor filed a Chapter 11 petition for reorganization. Subsequently, the debtor sought to recover those funds, as described above, paid to the unsecured trade creditors as avoidable preferences, pursuant to 11 U.S.C. § 547(b) ("section 547(b)").[1] After a hearing, the bankruptcy court, finding all elements of section 547(b) satisfied, held that the payments were preferential and ordered the unsecured creditors to return those funds. From this order, appellants initiated the instant appeal.

### I.

Appellants raise two issues on appeal. The first is raised by Liberty and

---

**1.** The relevant portion of 11 U.S.C. § 547 states:

(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of property of the debtor—

  (1) to or for the benefit of a creditor;

  (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

  (3) made while the debtor was insolvent;

  (4) made—

  (A) on or within 90 days before the date of the filing of the petition; or

  (B) between 90 days and one year before the date of the filing of the petition, if such creditor, at the time of such transfer—

  (i) was an insider; and

  (ii) had reasonable cause to believe the debtor was insolvent at the time of such transfer; and

  (5) that enables such creditor to receive more than such creditor would receive if—

  (A) the case were a case under chapter 7 of this title;

  (B) the transfer had not been made; and

  (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

Ferrous. These appellants argue that the bankruptcy court erred in finding that the funds transferred were property of the debtor, which is a prerequisite to avoiding a transfer under section 547(b). Liberty and Ferrous rely on application of the earmark doctrine. This doctrine protects a transfer of assets from a preference claim. It may be applicable where the assets in question were never under control of the debtor, were transferred from a third party to the creditor, and the debtor's estate is not diminished in value. *See generally,* 4 *Collier on Bankruptcy,* ¶ 547.25 (15th ed. 1986). Liberty and Ferrous argue that Chemical, not the debtor, controlled those funds in question and that the debtor's estate was not diminished in value. Therefore, they conclude, the funds belonged to Chemical and the transfers could not be avoided as preferences.

In addressing the contentions of Liberty and Ferrous, the Magistrate noted that the bankruptcy court found, as a matter of fact, that the debtor did retain control over the disbursement of the loan money from Chemical. Applying the clearly erroneous standard of review prescribed by Bankruptcy Rule 8013, the Magistrate found that there is sufficient evidence in the record to support the bankruptcy court's finding. Moreover, the Magistrate found that the payments reduced the value of the estate. Because Chemical is a secured creditor and the money was used to discharge portions of unsecured claims, the Magistrate reasoned that the estate is diminished by the value of the collateral given up to secure to Chemical loan. Thus, the Magistrate concluded, the bankruptcy court did not err in finding that the earmark doctrine does not apply and that the funds belonged to the debtor.

Liberty and Ferrous have not filed objections to the Magistrate's Report. Upon full consideration of the record, the parties' briefs, the applicable law, and the Magistrate's Report, this Court is in accord with the Magistrate that the bankruptcy court did not err in finding that the money used to pay appellants and other unsecured creditors was property belonging to the debtor.

## II.

The second issue on appeal is raised by Port Side. This appellant argues that the bankruptcy court erred in finding that 11 U.S.C. § 547(b)(5) has been met. Port Side notes that the bankruptcy court failed to calculate a hypothetical liquidation distribution under Chapter 7. Absent such a calculation, Port Side contends that the bankruptcy court could not, as a matter of law, find that the pre-petition transfer allowed Port Side to receive more than it would have in a Chapter 7 liquidation. Since there could be no such finding, Port Side concludes, section 547(b)(5) was not met and the payment it received could not be avoided as a preference.

In addressing Port Side's contention, the Magistrate noted that the bankruptcy court did not calculate a hypothetical liquidation. Rather, the bankruptcy court applied an "equivalent" analysis embodied in the rule that the debtor may satisfy section 547(b)(5) by showing that a payment was made to a creditor who would not have received a 100 percent distribution in a Chapter 7 case. *See Elliot v. Frontier Properties/LP,* 778 F.2d 1416 (9th Cir. 1985). The Magistrate noted that this rule applies only where the transfer was made to an unsecured creditor as a payment on account, and the debtor paid other unsecured creditors unequal percentages of their outstanding balances due. The Magistrate further noted that in the case at bar, the bankruptcy court found that payments were made to appellants on account, that other unsecured creditors received unequal percentages of their claims, and that in a Chapter 7 proceeding there would be less than a 100 percent distribution to unsecured creditors. Thus, the Magistrate concluded the bankruptcy court did not err in applying the equivalent analysis rather than performing a hypothetical liquidation.

Port Side filed objections to the Magistrate's Report. Port Side objects, contending that "[t]he Magistrate's Report errs in recommending affirmance of the Bankruptcy Court's Order based upon an 'equivalent

analysis' which, even if permissible, was not applied."

The rule applied by the bankruptcy court is not to be blandly applied in all situations. *See In re Entertainment, Inc.,* 375 F.Supp. 390 (E.D.Va.1974). However, where, as here, pre-petition payment is made to an unsecured creditor, and other unsecured creditors receive unequal percentages of their debt, the rule is merely a function of simple mathematics.

For instance, in the case at bar, Port Side received a pre-petition payment repaying about 20 percent of its claim, and, if the transfer is not avoided, will have received 100 cents on the dollar for that 20 percent of its claim. The debtor's two largest unsecured trade creditors received about 5 percent of their claims, and will have received 100 cents on the dollar for only 5 percent of their claims. Since a distribution under Chapter 7 would be less than 100 percent, Port Side would receive less than 100 cents on the dollar on 80 percent of its claim. The two largest unsecured trade creditors would receive less than 100 cents on the dollar on 95 percent of their claims. The net result is that Port Side, having received a greater percentage of its debt pre-petition, will take a loss on a smaller percentage of its total claim. However, had the pre-petition transfer not occurred, each unsecured creditor would receive less than 100 cents on the dollar for 100 percent of its respective claim. Thus, without performing a full blown hypothetical distribution, it is clear that the pre-petition transfer enabled Port Side to receive more than it would have in a Chapter 7 liquidation.[2]

In light of the foregoing, this Court finds that the bankruptcy court was not required to calculate a hypothetical liquidation distribution, and that it properly held that the debtor had met its burden to demonstrate that § 547(b)(5) was satisfied. Accordingly, this Court adopts the Magistrate's Report and incorporates it by reference here-

2. This reasoning is not limited to the pre-petition transfer to Port Side, but applies equally to

in. The order of the bankruptcy court shall be affirmed.

the debtor's pre-petition transfers to appellants Liberty and Ferrous.